NO. 12-01-00299-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


H.J. ROSS,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 H.J. Ross ("Appellant") appeals his murder conviction for which he was sentenced to
imprisonment for life. Appellant raises six issues on appeal. We affirm.


Background

 On July 14, 2000, Jimmy Walker ("Walker") came to Appellant's residence and socialized
with Appellant, Appellant's companion, Mary Ann, (1) and an acquaintance of Appellant, Shirley Jones. 
Appellant and Walker became displeased with one another, and Appellant asked Walker to leave his
property. When Walker refused, Appellant went inside his house. Meanwhile, Walker threw a lawn
chair at Appellant's house. Appellant reemerged from the house and stood in the doorway holding
a pistol. Appellant and Walker proceeded to curse at one another and Appellant again asked Walker
to leave. When Walker did not comply, Appellant fired a shot at the ground near Walker. Walker
responded by throwing a beer can at Appellant. Appellant fired yet another shot at the ground near
Walker. Walker then charged Appellant and the two struggled over the pistol. During the struggle,
Appellant's pistol was discharged twice. Both rounds struck Walker, who soon died as a result of the
two gunshot wounds.

 Appellant was charged with murder and pleaded "not guilty." Appellant filed a motion to
suppress his videotaped confession. The trial court denied Appellant's motion and the matter
proceeded to trial by jury. 

 At trial, Tyler Police Officer Matthew Liegeber ("Liegeber") testified that he went to the scene
of the shooting and was observing another officer check Walker's pulse when Appellant stated, "He's
dead," and after pausing briefly, continued, "I did it." Liegeber then testified that he immediately
placed Appellant under arrest. The State questioned Liegeber concerning what he had observed
related to Appellant's demeanor prior to the statement and then questioned Liegeber as follows:


 Q Okay. Did you hear Mr. Ross say anything else about what had happened?

 A No, sir, I didn't.


 . . . .


 Q (By Mr. Wright) Let me ask you this, Officer: Did Mr. Ross make any statements
to you? At the time when he said, "I did it, " did he explain it in any way?

 A No, sir, he didn't explain it at all.


 Q Did he say there was a struggle, and it went off accidentally?

 A No, sir. I don't recall -


 Q Did he say -

 

 [APPELLANT'S ATTORNEY]: I'm going to object at this point. May we approach
the bench?



During the ensuing bench conference, Appellant contended that the State was commenting on
Appellant's post-arrest silence. Although the trial court agreed that the State's question potentially
related to pre-arrest matters, the State agreed to rephrase its last question. Appellant requested an
instruction for the jury to disregard the State's last question, which the trial court granted. Appellant
moved for a mistrial, but the trial court denied Appellant's motion.

 Subsequently, the State questioned eye witness Harrell Thompson ("Thompson") about the
incident. While Thompson testified to several events he had observed, he was unable to remember
other events. At a bench conference, the State argued that it should be permitted to impeach
Thompson with the fact that he was at Appellant's house to buy beer and had a relationship with
Appellant, the nature of which was relevant to the jury's determination of Thompson's credibility. 
The State proceeded to question Thompson, without objection, about his extramarital relationship
with the woman who was a passenger in his car at the time in question. The State then questioned
Thompson as follows:


 Q Now, did you stop at the defendant's house to buy beer?

 A I might have did, and I might have not.


 [PROSECUTING ATTORNEY]: May I approach the witness, Your Honor?


 THE COURT: Yes.


 Q (By [Prosecuting Attorney]) Let me show you a statement and ask if this refreshes
your memory. Do you recall giving this statement July 14th to Detective Richard
Cashell?

 A (Reviews statement.) Yeah.


 ... .


 Q (By [Prosecuting Attorney]) Do you recall telling Detective Richard Cashell at the
Tyler Police Department and Special Agent Jeff Millslagle with the Federal Bureau
of Investigations that, "We stopped to buy a beer"?

 A I guess I told him that.

 

 Q Okay. Well, was that the truth or not the truth?

 A How long ago have that been?


 Q Well, it's been, I guess, a year and two days.

 A Where was you at a year and two days ago?


 Q Sir?

 A Where were you at a year and two days ago?


 Q Well -

 A You.

 

 Q -I'll tell you this, I wasn't at a murder scene watching somebody get killed.


 [APPELLANT'S ATTORNEY]: I'm going to object to Counsel being
argumentative, Your Honor.

 

 THE COURT: Sustained.



Appellant then moved for a motion to disregard, which the trial court granted. Appellant next moved
for a mistrial, but the trial court denied Appellant's motion. The State continued to question
Thompson as follows:


 Q Let me ask you one last question, Mr. Thompson. When you're in the truck with
Pluck, the beer in the back, your wife not knowing about it, did you ever think about
your wife?

 A Yeah.

 

 [APPELLANT'S ATTORNEY]: I'm going to object, Your Honor. This is - that is
absolutely argumentative.


 THE Court: Sustained.


 [APPELLANT'S ATTORNEY]: Absolutely. And may I have an instruction to the
jury to disregard?


 THE COURT: Jury disregard.


 [APPELLANT'S ATTORNEY]: Motion for mistrial, Your Honor. 


 THE COURT: Denied.



 The matter proceeded to jury argument, during which the State remarked,

 

 Ladies and Gentlemen, it's a very important case for this family, for this victim, for this community. 
People are going to know what you're doing here. I know you haven't read it. It's been in the paper
every day. 

 

 The message to send to the community is it's not going to be tolerated. . . . You don't just shoot
somebody 'cause they won't get off your property.


 . . . .


 The message we send to this community today is, when you do something like that, you're 

 going to be strictly scrutinized. You're going to be held accountable for what you did. So 

 when you think about doing that, don't take it as lightly as this defendant did.



Ultimately, the jury found Appellant guilty as charged and a jury trial on punishment was conducted
where Appellant presented himself as eligible for probation and testified briefly on his own behalf. 
Defendant's trial counsel inquired of Appellant if he had ever been "convicted of a felony in this state
or any other state or any federal court of the United States." Appellant responded, "Not as I know,
sir." Appellant's attorney persisted, "So you don't know - you've never been convicted," to which
Appellant responded, "For drunk." Upon further questioning by his attorney, Appellant testified that
he had never been convicted of a felony in this state or any other state . . . or of the United States." 


 The punishment phase proceeded to jury argument. During the State's argument, the
prosecuting attorney argued as follows:


 The defendant goes into the house, gets a gun, and comes back out and shoots at the feet, within six
inches of the victim. The victim is still refusing to leave.


 The defendant shoots . . . another round six inches from his foot. Victim and defendant struggle over
gun; gun is discharged; 39-year-old Jimmy Walker is dead at scene.


 Defendant is so upset about it, he sits and smokes a cigarette, and when the officer asked what he does,
he says, "He's dead. Yeah, I did it." Calm, with no rage and no anger.


 What do you do? Find sudden passion in that? Adequate cause?


 [APPELLANT'S ATTORNEY]: Your Honor, I'm going to object. Counsel is asking the jury to find
sudden passion at some time after this incident occurred. It's at the time after this incident occurred. 
It's at the time of incident and nowhere else. 


 THE COURT: Sustained. Rephrase that.


 [APPELLANT'S ATTORNEY]: May I have an instruction to the jury to disregard?


 THE COURT: Please disregard.


 [APPELLANT'S ATTORNEY]: Motion for mistrial.


 THE COURT: Denied.


 . . . .


 [PROSECUTING ATTORNEY]: If you've got a guy sitting there who has just shot somebody and he's
sitting there smoking, as calm as he is right now, what does that tell you about what he was thinking
when he committed the offense? You can consider that. That's just common sense.



Appellant offered no further objection to the State's argument. Ultimately, the jury sentenced
Appellant to imprisonment for life. Appellant filed a motion for new trial arguing that he was
incompetent to understand the proceedings. Appellant's motion for new trial was overruled and this
appeal followed.


Competency

 In his first issue, Appellant argues that the trial court erred in failing to hold a competency
hearing after sufficient evidence establishing bona fide doubt as to Appellant's competency was
presented. We review the trial court's alleged failure to conduct a competency hearing for abuse of
discretion. See Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A defendant is
presumed competent to stand trial and shall be found competent to stand trial unless proved
incompetent by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 46.02, § 1A(b)
(Vernon Supp. 2003). A person is incompetent to stand trial if the person does not have: (1)
sufficient present ability to consult with the person's lawyer with a reasonable degree of rational
understanding; or (2) a rational as well as factual understanding of the proceedings against the person. 
Tex. Code Crim. Proc. Ann. art. 46.02 § 1A(a) (Vernon Supp. 2003). If during the trial evidence
of the defendant's incompetency is brought to the attention of the court from any source, the court
must conduct a hearing out of the presence of the jury to determine whether or not there is evidence
to support a finding of incompetency to stand trial. Tex. Code Crim. Proc. Ann. art. 46.02, § 2(b)
(Vernon 1979). But before a trial court is required to conduct a competency hearing, there must be
some bona fide doubt as to the competency of the defendant. See Clark v. State, 47 S.W.3d 211, 218
(Tex. App.-Beaumont 2001, no pet.). Thus, a defendant must put forth some evidence in order to
seek a hearing on his competency or the trial court does not abuse its discretion in denying the
hearing. See Miles v. State, 688 S.W.2d 219, 224 (Tex. App.-El Paso 1985, pet. ref'd).

 In the case at hand, Appellant contends that his statement that he did not know if he had ever
been convicted of a felony was sufficient to raise some bona fide doubt as to his competency. Yet,
Appellant did not seek the trial court's review of his competency until he filed his motion for new
trial, which did not contain any supporting evidence. Viewing Appellant's testimony as a whole, it
is apparent that Appellant did, in fact, know whether he had been convicted of a felony. While
Appellant's initial uncertainty could be attributed to the question of whether Appellant's conviction
"for drunk" was a felony conviction, in the end, Appellant answered unequivocally that he had never
been convicted of a felony in this state or any other state or of the United States. Therefore, since
Appellant failed to offer evidence of his incompetency to the trial court during trial, we hold that the
trial court did not abuse its discretion in overruling his motion for new trial or otherwise refraining
from conducting a hearing on this issue of Appellant's competency. Appellant's first issue is
overruled.


Suppression of Videotaped Confession

 In his second issue, Appellant contends that the trial court erred in overruling his motion to
suppress his videotaped confession. We review a trial court's ruling on a motion to suppress for abuse
of discretion. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Curry v. State,
965 S.W.2d 32, 33 (Tex. App.-Houston [1st Dist.] 1998, no pet.). In reviewing the trial court's
ruling, we apply a bifurcated standard of review. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Hernandez v. State, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998). We give
almost total deference to the trial court's determination of historical facts, while conducting a de novo
review of the trial court's application of the law to those facts. See Carmouche, 10 S.W.3d at 327. 
The trial court is the exclusive finder of fact in a motion to suppress hearing, and as such, it may
choose to believe or disbelieve any or all of any witness's testimony. Romero v. State, 800 S.W.2d
539, 543 (Tex. Crim. App. 1990).

 Appellant argues that his statement was admitted into evidence in violation of Texas Code of
Criminal Procedure article 38.22, section 3, which states that no oral statement of an accused made
as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding
unless, prior to the statement but during the recording, the accused is given the warnings required by
law (2) and the accused knowingly, intelligently, and voluntarily waives such rights. See Tex. Code
Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon Supp. 2003). In support of his argument, Appellant
notes that he refused to sign a written waiver of his rights prior to making the statement. However,
Appellant fails to address the fact that the videotape evidence reflects (1) that Appellant's rights were
explained to him pursuant to article 38.22, section 2, (2) that Appellant stated that he understood his
rights, and (3) that Appellant agreed to proceed with the interview.

 In the context of either a written or oral confession, a waiver of rights may be inferred from
the actions and words of the person interrogated. See Mays v. State, 726 S.W.2d 937, 946 (Tex. Crim.
App. 1986); Barefield v. State, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989). In Barefield, the
defendant was given the required warnings and affirmatively acknowledged that he understood them,
but did not expressly waive his rights. See Barefield, 784 S.W.2d at 40. On appeal, Barefield argued
the confession was inadmissible because it did not comport with article 38.22, section 3(a)(2). Id. 
In affirming Barefield's conviction, the court explained, "We do not . . . interpret the oral confession
statute to require an express verbal statement from an accused that he waives his rights prior to giving
the statement. In reaching the voluntariness of a confession, this Court looks at the totality of the
circumstances." Id. at 40-41.

 In the instant case, having been informed of his rights pursuant to Texas Code of Criminal
Procedure article 38.22, section 2(a), Appellant stated that he understood his rights and eagerly
proceeded with the interview. Therefore, considering the totality of the circumstances, we conclude
that Appellant made a knowing, intelligent, and voluntary waiver of his rights in accordance with
article 38.22. As such, we hold that the trial court did not abuse its discretion in overruling
Appellant's motion to suppress. Appellant's second issue is overruled.

 

Comment on Post-Arrest Silence

 In his third issue, Appellant contends that the trial court erred in denying his motion for
mistrial following the prosecutor's question concerning whether Appellant made any statements to
an investigating officer after he was arrested. A comment on a defendant's post-arrest silence violates
the rights of the accused under the Fifth Amendment of the United States Constitution and article I,
section 10 of the Texas Constitution. Johnson v. State, 83 S.W.3d 229, 231 (Tex. App.-Waco 2002,
pet. ref'd). When the trial court sustains an objection and instructs the jury to disregard, but denies
appellant's motion for a mistrial, the question is whether the trial court erred in denying the mistrial. 
See Sauceda v. State, 859 S.W.2d 469, 474 (Tex. App.-Dallas 1993, pet. ref'd). Only when it is
apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions
are not likely to prevent the jury from being unfairly prejudiced against the defendant may a motion
for mistrial be granted. See Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); see also
Ford v. State, 14 S.W.3d 382, 394 (Tex. App.-Houston [14th Dist.] 2000, no pet.). The asking of an
improper question, by itself, will seldom call for a mistrial. See Moore v. State, 882 S.W.2d 844, 847
(Tex. Crim. App. 1994). Further, an instruction to disregard an improper comment on appellant's
post-arrest silence is generally sufficient to cure any harm, see Dinkins v. State, 894 S.W.2d 330, 356
(Tex. Crim. App. 1995), and will be presumed effective unless the facts of the case suggest the
impossibility of removing the impression produced on the minds of the jury. See Waldo v. State, 746
S.W.2d 750, 754 (Tex. Crim. App. 1988). The effectiveness of a curative instruction is determined
on a case-by-case basis. See Veteto v. State, 8 S.W.3d 805, 811 (Tex. App-Waco 2000, pet. ref'd).

 In the instant case, Appellant makes no argument that the trial court's instruction to disregard
was ineffective, save a conclusory allegation that the State's question "was of such a significance and
depth that no jury could be expected to ignore that the defendant had chosen not to make a statement
about the struggle over the gun." Based on our review of the record, we are unable to conclude that
the facts of the instant case, in and of themselves, suggest the impossibility of removing the
impression from the jury's mind that Appellant chose not to make a statement about a struggle over
the gun, if any. Therefore, we hold that the trial court's instruction to the jury to disregard the State's
question cured the error. (3) Appellant's third issue is overruled.

Improper Comments to a Witness

 In his fourth issue, Appellant argues that portions of the State's questioning of Thompson
"went beyond the bounds of permissible examination" of a witness, and that the trial court erred in
overruling Appellant's motions for mistrial in this regard. (4) The rules governing our review of
Appellant's fourth issue are set forth in our discussion of Appellant's third issue above.

 Again, Appellant makes no argument that the trial court's instruction to disregard was
ineffective, save a conclusory allegation that the State's questioning "infected the jury with a prejudice
that could not be cured by an instruction from the court." We disagree. Although the State's
questioning may have been conducted inappropriately, the facts that were the subject of the State's
questions had been the subject of Thompson's previous testimony, and were introduced without
objection. The prosecutor's statement that he had not been at a murder scene a year and two days ago
did not imply anything about Thompson that Thompson had not already admitted to the jury
previously. Moreover, only moments before the State asked Thompson if he was "thinking about his
wife," Thompson had testified that he was having an extramarital, sexual relationship with the girl
who was a passenger in his car that day.

 We iterate that the asking of an improper question, by itself, will seldom call for a mistrial. 
See Moore, 882 S.W.2d at 847. An instruction to disregard an improper comment is generally
sufficient to cure any harm. See Dinkins, 894 S.W.2d at 356. A curative instruction will be presumed
effective unless the facts of the case suggest the impossibility of removing the impression produced
on the minds of the jury. See Waldo, 746 S.W.2d at 754. Based on our review of the record, we are
unable to conclude that the prosecutor's statements were so emotionally inflammatory that curative
instructions were not likely to prevent the jury being unfairly prejudiced against the defendant. 
Therefore, we hold that the trial court's instruction to the jury to disregard the State's question cured
the error and that the trial court did not abuse its discretion in denying Appellant's motion for mistrial. 
Appellant's fourth issue is overruled.


Improper Jury Argument - Guilt/Innocence Phase

 In his fifth issue, Appellant contends that the prosecutor's statement during the State's jury
argument that "[p]eople are going to know what you're doing here" and "it's been in the paper every
day" amounted to coercing the jury into believing that anything less than a maximum verdict would
subject them to public ridicule and derision. However, Appellant failed to object during jury
argument to the prosecutor's argument of which he now complains. Failure to object to alleged
improper jury argument constitutes waiver of such an issue on appeal, even if the argument is so
prejudicial that its harmful effect cannot be cured by a jury instruction to disregard. See Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Bias v. State, 937 S.W.2d 141, 144 (Tex.
App.-Houston [1st Dist.] 1997, no pet.); see also Gonzales v. State, 746 S.W.2d 878, 879-81 (Tex.
App.-El Paso 1988, no pet.). Therefore, we hold that by his failure to object to the State's allegedly
improper jury argument, Appellant waived any such error. Appellant's fifth issue is overruled.


Improper Jury Argument - Punishment Phase

 In his sixth issue, Appellant argues that the trial court abused its discretion in denying
Appellant's motion for mistrial based on the prosecutor's statement that the jury could discern sudden
passion at some time after this incident occurred. (5) Arguing that the trial court's instruction to
disregard was ineffective, but without reference to any supporting authority, Appellant states

 

 [i]t was improper for the court to deny the motion for mistrial because the instruction to disregard did
not overcome the depth of prejudice which was made on the jury b[y] the statement. Sudden passion
was a significant question, which the jury had to answer in their verdict form in the punishment phase. 
A finding of sudden passion would have significantly reduced the range of punishment faced by Mr.
Ross and the State deliberately misled the jury regarding the facts of this case so they would be
persuaded not to find sudden passion.



Appellant's argument as to the significance and benefits to Appellant of jury finding of sudden
passion have no bearing on whether the trial court's curative instruction was not likely to prevent the
jury from being unfairly prejudiced against the defendant. A curative instruction is presumed 
effective unless the facts of the case suggest the impossibility of removing the impression produced
on the minds of the jury. See Waldo, 746 S.W.2d at 754. We hold that Appellant has failed to
overcome such a presumption. (6) Appellant's sixth issue is overruled.


Conclusion

 Having overruled each of Appellant's six issues, we affirm the judgment of the trial court.


 JAMES T. WORTHEN 

 Chief Justice

Opinion delivered May 14, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.



(DO NOT PUBLISH)
1. Subsequent to the events set forth herein, but before the trial of this matter, Mary Ann married Appellant. 
At the time of trial, she had taken Appellant's surname. 
2. See Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon 1979).
3. We note that the trial court never sustained Appellant's objection on this point, although it did suggest that
the State be "very careful." Based on our review of the record, given the questions leading up to the question to
which Appellant objected, it would be reasonable to conclude that the State was referring to statements made by
Appellant prior to his arrest.
4. Appellant further argues that the trial court erred in overruling his motion for new trial on such grounds. 
However, our review of Appellant's motion for new trial reveals no argument concerning the State's alleged
improper questioning of Thompson. As such, we will focus on the trial court's denial of Appellant's motions for
mistrial.
5. The rules governing our review of Appellant's sixth issue are set forth in our discussion of Appellant's
third issue above.
6. Moreover, we find the notion that the State's argument was so emotionally inflammatory that a curative
instruction was not likely to prevent the jury from being unfairly prejudiced against the defendant to be untenable in
light of the fact that Appellant failed to object when the State immediately made the same alleged emotionally
inflammatory argument to the jury a second time.